**FREEMAN, NOOTER & GINSBERG**
ATTORNEYS AT LAW

LOUIS M. FREEMAN                                75 MAIDEN LANE
THOMAS H. NOOTER*                                    SUITE 907
LEE A. GINSBERG                               NEW YORK, N.Y. 10038

                                                (212) 608 0808
*NY AND CALIF. BARS                          Cell: (917) 847 1361

April 23, 2025

**TO BE FILED UNDER SEAL**

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    RE:    United States v. Vladimir Antonio Arevalo-Chavez
               Criminal Docket No. 22-429 (JMA)

Dear Judge Azrack:

Introduction

      The defendant, Vladimir Arevalo-Chavez, by undersigned counsel, moves the Court for a hearing on the issues of what the reasons are for the dismissal, and whether the request is made in bad faith, or in the alternative, delaying the entry of a final order of dismissal in this case for a period of seven (7) days so that the defendant can file a writ of habeas corpus, and that the judge assigned to such writ will have time to enter orders on timing and sufficiency of service, and to consider an application for a temporary restraining order prohibiting moving Mr. Arevalo-Chavez from the District and from the United States prior to ensuring that his

rights under the immigration laws and treaty obligations of this country are afforded to him.

## Background

On February 23, 2023 the defendant was indicted in this case. On March 15, 2023, the defendant was arraigned on the indictment in the Eastern District of New York (after being removed from the Southern District of Texas, where he was sent by Mexican authorities without conducting an extradition proceeding). On April 1, 2025, the government filed a Motion to Dismiss the case. (Document under seal). Counsel's understanding is that the Government now intends to pursue the deportation of Mr. Arevalo-Chavez in lieu of this prosecution.

We expect that the Government intends to send our client back to El Salvador without giving him any chance to contest whether doing so would violate our immigration laws and treaty obligations. If and when this Court enters an Order dismissing this case, Mr. Arevalo-Chavez could immediately be transferred to ICE custody and be removed pursuant to the rules providing for "expedited removal" pursuant to 8 U.S.C. 1228(b)(1), (I.N.A. 238(b)(1)), without an opportunity to raise any defenses, or the Justice Department may try to send our client to El Salvador under the authority of the Alien Enemies Act, as it has done with citizens of Venezuela and of El Salvador whom they suspect of being

members of gangs. The danger that Mr. Arevalo-Chavez will be unlawfully deported by ICE or DOJ without due process to El Salvador – where he would almost certainly be immediately detained at one of the worst prisons in the world – without affording him any opportunity to contest his removal, is substantial, both in light of the Government's recent actions and in other similar cases.

As the Court is aware, this Administration recently ordered the deportation of certain immigrants to El Salvador without any due process, without any notice, without any hearing, and without any right to contest whether they are in fact removable, citing the Alien Enemies Act of 1798. *J.G.G. v. Trump*, (I:25-cv-0076) (D. D.C. 2025). Despite being ordered by U.S. District Judge James Boasberg not to remove the petitioners pending resolution of the case, and to immediately turn back any deportation flights carrying any of the petitioners, the Government nonetheless removed those petitioners to El Salvador and later argued that the court had no jurisdiction once the petitioners were no longer on U.S. soil. The President went a step further with public insults and attacks targeting Judge Boasberg and calling for his impeachment.

More close to home, <u>this</u> Court dismissed a similar indictment of alleged MS-13 member, in the case of *United States v. Cesar Lopez-Larios*, Criminal Docket No. 20-577 (JMA), on a very similarly-worded motion made by the

government, and that defendant was apparently sent out of the United States within 24 hours of the dismissal without any opportunity to seek any relief from removal that he might have had. An article from the *New Yorker Magazine* shows that he ended up in the notorious CEPOT prison in El Salvador, along with hundreds of alleged members of the Venezualan gang, Tren de Arargua. See *New Yorker*, "Terrorism Suspect Trump Sent Back to Bukele," by Danielle Mackey, April 18, 2025, about the arrival of Cesar Lopez-Larios at CECOT prison.

Based on this recent pattern of abuse of process and defiance of court orders by immigration enforcement officials, there is a substantial risk that if this Court enters a dismissal order at this time that Mr. Arevalo-Chavez may be immediately deported without due process and before he has an opportunity to retain immigration counsel (if he is in another district, for example), or assert any defenses he may have to removal. In that event, it is almost certain that Salvadoran authorities would immediately detain him upon arriving in El Salvador and keep him indefinitely at CECOT (the notorious "terrorism" prison) without any trial or due process based on the United States Government's public pronouncements that he is a "top leader" of MS-13. The risk of this turning effectively into a life sentence without any due process is very real.

The recent history of the Government's actions in these similar cases give

sufficient reason for this Court to inquire into whether the unstated reasons for the dismissal are actually valid, and for the Court to take some sort of protective action to prevent our client from being whisked away from the United States before he can exercise his rights to due process (by allowing him the time and opportunity to file a writ habeas corpus pursuant to 28 U.S.C. § 2241).

<u>Defendant's Motion to have the Indictment Dismissed With Prejudice</u>

The government's motion of April 1, 2025, seeks to have the indictment dismissed without prejudice. While we do not oppose the dismissal, the defense contends that the indictment should be dismissed <u>with</u> prejudice, or in the alternative, that this Court should order a hearing to determine whether the motion – which is made giving only vague and unspecified reasons – be required to show: 1) that there are legitimate reasons for seeking to have the indictment dismissed, and 2) that such dismissal is not being made to provide an avenue for later prosecutorial harassment.

The decision and order of United States District Judge Dale E. Ho of the Southern District of New York in the case of *United States v. Eric Adams*, S.D.N.Y Docket No. 24-cr-00556 (DEH) is instructive here. (Opinion and Order Docket No. 177, filed April 2, 2025). Judge Ho correctly determined that a District Court has discretion to determine whether to grant leave of Court and the timing of the entry

of any dismissal order. *See United States v. Goodson*, 204 F.3d 508,512 (4th Cir. 2000). The two considerations are, as previously stated, whether there are valid reasons for withdrawing its effort to prosecute the defendant, particularly if there may be bad faith on the part of the government, and whether dismissal without prejudice opens the defendant up to prosecutorial harassment at a later date because the threat of future prosecution hangs over him or her indefinitely.

First, the Government has failed to comply with its obligation to disclose the reason(s) for its Motion to Dismiss. This is a prerequisite for this Court's exercise of its supervisory authority under Rule 48(a). Rule 48(a) provides: "The government may, <u>with leave of court</u>, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a) (emphasis added). By requiring "leave of court" for dismissals by the Government, the Federal Rules of Criminal Procedure deliberately altered the common-law rule, under which a prosecutor could "enter a *nolle prosequi* in his discretion, without any action by the court." Fed. R. Crim. P. 48(a)(advisory committee's note to 1944 adoption).

It is true that the discretion of the Court in this regard is limited. *See United States v. Goodson*, <u>supra</u>.  But Rule 48(a) requires more of a court than to "serve merely as a rubber stamp for the prosecutor's decision." *United States v Ammidown*, 497 F.2d 6l5 (D.C. Cir. 1974). The amount of discretion conferred by

the "leave of court" clause is best explained as follows:

> It seems altogether proper to say that the phrase 'by leave of court' in Rule 48(a) was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of Executive prerogatives. ... The exercise of its discretion with respect to the termination of pending prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest. In this way, the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values." *United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995) (quoting *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975)).

Stated another way, Rule 48(a) "contemplates a division of labor consistent with the constitutional design, which 'enjoins upon its branches separateness but interdependence, autonomy but reciprocity.'" *United States v. Eric Adams*, supra, (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring)). To that end, Rule 48(a) has procedural and substantive requirements. As a matter of procedure, "in the exercise of its responsibility, the court will not be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons and underlying factual basis." *Ammidown*, supra, 497 F. 2d at 620. As a matter of substance, "the court does not have primary responsibility, but rather the role of guarding against abuse of prosecutorial discretion." Id. In the final analysis, "the disposition of a government's motion to dismiss an indictment should be decided

by determining whether the prosecutor acted in good faith at the time he moved for dismissal." *United States v. Smith*, id.

Thus, the Government's memorandum begs the question: how is the Court to determine whether the Government is acting in bad faith, or whether its motion to immediately dismiss the case is "clearly contrary to manifest public interest," without any disclosure by the Government of its reason(s) for the instant motion? How is the Court to exercise its discretion as a co-equal branch of government, rather than a rubber stamp, if it signs off on the Government's motion to dismiss that is predicated on no more than the terse statement that it has "geopolitical and security reasons" for seeking the dismissal.

Following the Supreme Court's decision in *Rinaldi v. United States*, 434 U.S. 22 (1977), courts have discerned that "[t]he primary concern" underlying Rule 48(a)'s "leave of court" provision "was that of protecting a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution." *Ammidown*, supra, 497 F.2d at 620; see also *United States v. Friedman*, 107 F.R.D. 736, 740 (N.D. Ohio 1985) ("[T]he words of reservation inserted into Rule 48(a) ['leave of court'] ... are for the ultimate benefit and protection of the people themselves.").

The Government's motion also asserts that they are dismissing the case so that the government of El Savador "can proceed first with its criminal charges against the defendant under Salvadoran law." (See Government's Motion to Dismiss, April 1, 2025). We note here that we have inquired of the Government whether there are charges actually pending against our client in El Salvador, what they are, and in what court they are pending, without receiving an answer. We ask that this Court make a similar inquiry. From the recent history of El Salvador under the current administration of Nayib Bukele there has been little evidence that citizens of that country get a speedy trial, or any trial, on actually-filed criminal charges. Rather, what is clear from the manner in which the Government has handled similar cases that it intends to hand over Mr. Arevalo-Chavez to the Salvadoran authorities so that he can be imprisoned there through a process in which there are no due process requirements, no constitutional rights, no judicial oversight, and where he may never even get a trial in the courts of El Salvador. This smacks of bad faith, and is, at the least, precisely the type of evil against which the "leave of court" clause in Rule 48(a) seeks to protect.

In order for this Court to be in a position to exercise its supervisory authority under Rule 48(a), the Government must disclose to the Court: (1) the factual basis for its motion to dismiss; and (2) whether, upon the dismissal of this case, it

intends to comply with the law and place Mr. Arevalo-Chavez in ordinary removal proceedings with all the attendant due process rights, or whether it intends to summarily deport him without due process as it has done to hundreds of others, knowing full well that he will likely be placed in a notorious prison without any due process where he will be abused and possibly tortured, just as seems to have happened in the similar case where this Court dismissed, on an identical motion, the indictment at the request of the government in *United States v. Cesar Lopez-Larios,* supra, E.D,N.Y docket 20 Cr. 577 (JMA). Without these disclosures, the Court cannot properly exercise its discretion in determining whether the Government is, in fact, acting in good faith as it asserts or simply using the Court to facilitate an impending violation of the Constitution.

    The Government's rush to have an order swiftly entered so that it can carry out the immediate deportation to El Salvador is also made in bad faith because there is no obvious reason why there is such urgency to send our client back to El Salvador when it is unlikely he will get a speedy trial. There is no reason why this Court should not explore the real reasons behind the effort to send our client back to El Salvador with allowing him to raise legal objections to his removal. That exercise of judicial oversight, which is demanded by Rule 48(a), necessitates some delay in order for the Court to get the answers it needs from the Government to

-10-

make its ultimate determination.

Second, to the extent that the Government opposes anything beyond a very cursory review of their reasons for the dismissal[1], we note that the Government is the moving party and it is the Government's Motion to Dismiss that is pending before the Court, and as the movant, it bears the burden of production and persuasion, a burden it has yet to meet. As for the request for a delay, while the Court's discretion in ultimately ruling on the Government's motion to dismiss is indeed limited, its discretion in determining the appropriate timing of such an order is not, particularly where, here, the necessary factual record has not been developed. See, e.g., *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 187 (4th Cir. 1993) ("It was not an abuse of discretion to delay ruling on the standing issue until discovery of the relevant underlying facts was complete.... Indeed, to rule otherwise would run the risk of rewarding a party's noncooperation or compelling the district court to rule on a sensitive matter ... before the full facts were even before it."); see also, *Landis v. N. Am. Co.*, 299 U.S. 248,254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.")

---

[1] See Government's letter of April 10, 2025, opposing our request for additional time to prepare this response to their motion, at page 2.

...

We also ask the Court to inquire into the other concern about such a dismissal, which is whether a dismissal without prejudice is designed to leave a sword of Damocles hanging over the defendant so that he can be prosecuted again under the "dual sovereignty" principle, or otherwise mistreated by restoring the prosecution at a later time. See the *Eric Adams* decision, supra, at pp. 44-45.

For those reasons we ask that this Court set a schedule for discovery and a hearing, if necessary, so that it can be determined whether the motion to dismiss has a justifiable governmental reason and is not made in bad faith. We further ask that if and when the Court does grant the motion to dismiss, that it be with prejudice.

## Application to Delay Entry of any Order of Dismissal

Because the recent history of motions to dismiss criminal cases in the District Courts show that defendants in such cases are being immediately removed to El Salvador, whether they are from El Salvador or not, without giving them any opportunity to make legally sanctioned applications for asylum, withholding of removal, and withholding of removal based on Article III of the Convention Against Torture, we simply ask that if this Court orders the dismissal of the indictment, with or without prejudice, that entry of the order be delayed by seven days so that counsel have time to file a petition for a writ of habeas corpus in an

effort to have the supervision of the removal process be made by a court, rather than the unbridled and apparently uncontrolled actions of the Executive Branch. In doing this we commend to the Court's attention a similar order entered in a case in the Eastern District of Virginia, where, like here, the government moved to dismiss an indictment against a citizen of El Salvador who was alleged to be a member of the MS-13 gang, and the court granted a delay of entry of the order of dismissal for exactly the same reasons we are requesting here. See *United States v. Henry Josue Villatoro Santos,* 25 Mag. 204 (WEF), Dkt. No. 20, entered April 15, 2025. (Copy attached as **Exhibit A**).

In this rushed and chaotic push for maximum immigration enforcement, it is now undisputed that the government has wrongfully deported individuals who should never have been removed, and that Court supervision of a defendant's rights through the filing of a writ of habeas corpus is necessary.

In the U.S. Supreme Court's *per curiam* decision in *Donald J. Trump v. J.G.G.,* 604 U.S. __ (April 7, 2025), the Court stated that 1) habeas corpus is the appropriate mechanism for asserting the rights to due process (citing *Heikkila v. Barber,* 345 U.S. 229, 234-235 (1953)), the Court stated:

> '"It is well established that the Fifth Amendment entitles aliens to due process of law" in the context of removal proceedings. *Reno v. Flores*, 507 U. S. 292, 306 (1993). So, the detainees are entitled to notice and opportunity to be heard "appropriate to the nature of the case."

>*Mullane v. Central Hanover Bank & Trust Co.,* 339 U. S. 306, 313 (1950). More specifically, in this context, AEA detainees must receive notice after the date of this order that they are subject to removal under the Act. <u>The notice must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs</u>. [Emphasis added.]

Justice Sotomayor did not mince words in her dissenting opinion in that case, writing that "the Government has largely ignored its obligations to the rule of law" in its handling of the summary deportations of alleged members of Tren de Aragua to El Salvador. And since effectuating those summary deportations without due process, the administration has publicly stated its intent to expand its invocation of the Alien Enemies Act beyond suspected members of Tren de Aragua. On April 8, 2025, Acting Immigration and Customs Enforcement Director Todd Lyons told reporters that the administration is looking to invoke the Alien Enemies Act to deport alleged members of MS-13.

Thus, we do not know whether the government intends to swiftly send the defendant back to El Salvador under the authority of the Immigration and Nationality Act or pursuant to the Alien Enemies Act of 1798. The Government has disregarded the well-established principle that non-citizens are entitled to due process of law and has defied court orders in the process in other cases, effectively carrying out forcible disappearances to the black hole that is CECOT.

For centuries this country has applied the Constitutional principles of due

process of law to any and all accused by the government of being criminals, and that is all we ask for here. The methods being used during these past three months show plainly that the Government is doing everything it can to avoid giving those rights to people who, for political reasons – that the government is vaguely justifying by saying it has "geopolitical and national security reasons" (otherwise unspecified), the government is whisking away to a dark hole in a corner of the Earth where no due process exists. We simply ask for time to assert the due process rights our client has while he is here, and the to be able to make sure that he stays here until his rights are adjudicated.

    Finally, the Government has not identified in any meaningful way how it would be prejudiced if the Court were to delay the entry of the Order of Dismissal and allow Mr. Arevalo-Chavez additional time to ensure he is adequately represented in immigration proceedings. Mr. Arevalo-Chavez is in custody, and if the Government has filed an ICE detainer, they will not lose custody of him during his proceedings. The Government's ability to legally pursue his removal in immigration proceedings does not diminish by the day. The only reason for the Government to oppose the request for a delay in finalizing the case to allow Mr. Arevalo-Chavez to get into immigration court prior to being sent off to El Salvador is if it in fact intends to 'immediately deport' him as the did in the *Cesar Lopez*

*Larios* case. This Court cannot and should not facilitate such a lawless goal. In the words of Justice Felix Frankfurter:

> There can be no free society without law administered through an independent judiciary. If one man can be allowed to determine for himself what is law, every man can. That means first chaos, then tyranny. Legal process is an essential part of the democratic process. For .. legal process is subject to democratic control by defined, orderly ways which themselves - are part of law. In a democracy, power implies responsibility. The greater the power that defies law the less tolerant can this Court be of defiance. As the Nation's ultimate judicial tribunal, this Court, beyond any other organ of society, is the trustee of law and charged with the duty of securing obedience to it. *United States v. United Mine Workers,* 330 U.S. 258, 312 (1947).

Conclusion and Request for Relief

For these reasons, Mr. Arevalo-Chavez respectfully moves the Court to take the Government's Motion to Dismiss under advisement; to direct the Government to disclose the information necessary for this Court to determine the basis of its Motion to Dismiss, including specifically what its reasons are for moving to dismiss the indictment and whether it intends to summarily remove Mr. Arevalo-Chavez; to grant his Motion to Delay Entry of a Dismissal Order; and for such further relief as the Court deems necessary and appropriate.

Dated:     New York, New York
           April 23, 2025

          Respectfully submitted,

          */s/ Louis M. Freeman*
          LOUIS M. FREEMAN

          */s/ Thomas H. Nooter*
          THOMAS H. NOOTER

          Attorneys for Defendant
          Vladimir Antonio Arevalo-Chavez

cc:    Office of the United States Attorney
        Eastern District of New York
        John J. Durham, United States Attorney
            by email to Justina L. Geraci, AUSA

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 1:25-mj-204-WEF |
| HENRRY JOSUE VILLATORO SANTOS, *Defendant.* | |

### ORDER

This matter is before the Court on the Government's Motion to Dismiss (Dkt. 14) and Defendant's Motion to Delay Entry of Dismissal Order (Dkt. 15). The Court held a hearing on the Motions on April 15, 2025, at which the Government and Defendant, personally and by counsel, appeared.

Upon consideration of the Motions and for the reasons stated in open court, it is hereby

**ORDERED** that the Government's Motion to Dismiss (Dkt. 15) is **GRANTED;** and it is further

**ORDERED** that the Defendant's Motion to Delay Entry of Dismissal Order (Dkt. 15) is **DENIED**; and it is further

**ORDERED** that the criminal complaint against the Defendant is dismissed without prejudice; and it is further

**ORDERED** that the entry of the dismissal of the criminal complaint against the Defendant is **STAYED** until 10:00am ET on Friday, April 18, 2025 to permit Defendant to appeal this Order or pursue other remedies; and it is further

**ORDERED** that the Defendant shall remain in the custody of the United States Marshal until 10:00am ET on Friday, April 18, 2025; and it is further

Exhibit A

**ORDERED** that the Defendant may not be transferred to the custody of the Department of Homeland Security before 10:00am ET on Friday, April 18, 2025.

**IT IS SO ORDERED.**

**ENTERED** this 15th day of April, 2025.

                                                           *William C. Fitzpatrick*
                                                   WILLIAM E. FITZPATRICK
                                                   UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia