1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X
UNITED STATES OF AMERICA,
                               :   22-cr-429
                                   (JMA)
    -against-              :  United States Courthouse
                                  Central Islip, New York
VLADIMIR AREVALO-CHAVEZ,
                               :  July 24, 2025
              Defendant.    11 a.m.
-------------------------------X

                  TRANSCRIPT OF STATUS CONFERENCE
                BEFORE THE HONORABLE JOAN M. AZRACK
                UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:       JOSEPH NOCELLA, ESQ.
                          UNITED STATES ATTORNEY
                            BY: JOHN DURHAM, AUSA
                                JUSTINA GERACI, AUSA
                                PAUL SCOTTI, AUSA
                          100 Federal Plaza
                          Central Islip, New York 11722


For the Defendant:        LOUIS FREEMAN, ESQ.
                          THOMAS NOOTER, ESQ.
                          Freeman Nooter & Ginsberg
                          75 Maiden Lane, Ste. 907
                          New York, NY 10038


Official Court Reporter:   Paul J. Lombardi, RMR, FCRR
Ph. (631) 712-6106        100 Federal Plaza - Suite 570
                          Central Islip, New York 11722


          Proceedings recorded by mechanical stenography.
                Transcript produced by CAT.

2

1          THE CLERK:  Calling criminal case 22-429, United

2    States of America versus Vladimir Arevalo-Chavez.

3          Counsel please state your appearances for the

4    record.

5          MR. DURHAM:  John Durham, Justina Geraci and

6    Paul Scotti for the United States.  Good morning, your

7    Honor.

8          THE COURT:  Good morning.

9          MR. FREEMAN:  Good morning, your Honor.  Louis

10   Freeman and Thomas Nooter for Mr. Arevalo-Chavez.

11         THE COURT:  Good morning, Mr. Freeman,

12   Mr. Nooter, and Mr. Arevalo-Chavez.

13         THE DEFENDANT:  Good morning.

14         THE COURT:  So you have all received my July

15   16th decision concerning unsealing and I put this matter

16   on today because I want to raise several issues with the

17   parties.

18         First, Mr. Freeman, in March 2023 your client

19   pled not guilty to all of the charges in the indictment.

20   I assume that there has been no change in his plea as to

21   any of the charges.

22         MR. FREEMAN:  Your Honor, I understand from your

23   deputy that you prefer if we sit.

24         THE COURT:  Yes, so you can use the microphone.

25         MR. FREEMAN:  I'm going to sit.

3

1        THE COURT:  Yes.

2        MR. FREEMAN:  His plea of not guilty is the same

3    plea today as it was in March.

4        THE COURT:  And to the prosecution, as I

5    stressed in my July 16th decision, the government has

6    brought very serious charges against the defendant and his

7    codefendants who are alleged to be leaders of MS-13.

8        The crimes alleged here have had grave

9    consequences in this district and across the

10   United States.  One very important concern for this court

11   is preserving the integrity of this criminal case.  In its

12   April 30th and June 23rd letters the government raised the

13   prospect that the defendant might prevail on his

14   immigration claims which could preclude his deportation to

15   El Salvador.  As such, the government has asserted that I

16   should dismiss the indictment without prejudice so that

17   the government could reinstate the charges in the

18   indictment if the defendant cannot be removed to

19   El Salvador.  In my view this raises some issues.  Even if

20   the indictment were dismissed without prejudice, the

21   government couldn't simply reinstate the charges.  The

22   government would have to go to a grand jury and obtain a

23   new indictment that is timely under the statute of

24   limitations.

25        So I think that we are doing this backwards.

4

1   Why doesn't the government address the defendant's

2   immigration claims first, put the defendant through

3   whatever immigration proceedings the law requires.  If the

4   defendant prevails, and can't be removed to El Salvador,

5   then the motion to dismiss would be moot and the criminal

6   case can go to trial.

7         On the other hand, if the government prevails,

8   and can remove the defendant to El Salvador, then the

9   motion to dismiss would be ripe for a decision.  This all

10  leads to the following questions:

11        Why doesn't the government address the

12  defendant's immigration claims first?  Why would the

13  government want to disturb this indictment and dismiss

14  these very serious charges when we don't even know if the

15  defendant can be removed to El Salvador?

16        I'm happy to hear from you today on this.  But I

17  also want you to take some time and consider my questions

18  and the issues that they raise and I'm going to ask for a

19  formal submission from the government and the defense and

20  I'll give you dates later.

21        MR. DURHAM:  Would you like me to address that

22  point, your Honor?

23        THE COURT:  To the extent you can.

24        But, as I said, I'm going to want an additional

25  submission because I want a little more consideration.

5

1    MR. DURHAM:  Thank you, your Honor.  We

2    appreciate the opportunity to be heard in writing.

3         I will just say briefly, though, at this point

4    there is nothing for the government to respond to in the

5    immigration context.  At least as far as we are aware

6    nothing has been filed by the defense in immigration

7    court.  So there isn't a pending matter for us to respond

8    to to address that.  I know in some of their papers they

9    alluded to the fact they would file a 2255 --

10   THE COURT:  I'm saying stay this and then he

11   gets to go through immigration court and go through the

12   procedure there.

13        It wouldn't require you to do anything at this

14   point other than see what happens in immigration court.

15   But, go ahead.  Finish your thought.  That's it?

16   MR. DURHAM:  I'm just trying to think through

17   the logistics of that and we can address it in writing.

18        As of now he is being held by the United States

19   Marshals pursuant to this court's authority.  He can't be

20   moved to immigration court to address those proceedings

21   while he's still in their custody.

22   THE COURT:  But he may be able to initiate

23   something.  I gave my reasons, which is, if he's found to

24   not be removable there is no reason for me to entertain

25   the motion.

1          I also wanted to discuss with you another case

2   from this district where the government sought to dismiss

3   charges so that it could deport a defendant to a foreign

4   country to face investigation and prosecution there.  I

5   know you are aware in the United States versus Salvador

6   Cienfuegos Zepeda, 19-cr-366, where the government charged

7   the Secretary of National Defense in Mexico with drug

8   trafficking crimes stemming from his alleged involvement

9   with a drug cartel.  The government eventually sought to

10  dismiss the charges against the defendant so Mexico could

11  proceed first with investigating and potentially

12  prosecuting the defendant under Mexican law.

13         But in that case the defendant had signed a

14  removal agreement in which he waived any rights he might

15  have had to relief or protection from removal under the

16  INA or the Convention Against Torture.  In that case it

17  was clear that the defendant would be removed to Mexico

18  which justified granting the government's motion to

19  dismiss.

20         Mr. Arevalo-Chavez's case is in a much different

21  procedural posture.  Doesn't that approach taken by your

22  office in the Zepeda case support addressing

23  Mr. Arevalo-Chavez's immigration claims first?  And, once

24  again, I'll give you a chance to investigate it, discuss

25  it with your office, and you can respond formally with a

7

1   submission because I'm going to want a submission.  But I

2   want to put that out there and I want you to address it.

3            MR. DURHAM:  Okay.  We'll address that in

4   writing, your Honor.

5            THE COURT:  The next matter I wanted to raise is

6   that both parties have filed letters in this case which

7   referenced the Villatoro Santos case, which is in the

8   Eastern District of Virginia and, as I'm sure you know, in

9   the Villatoro Santos criminal case the court granted the

10   government's motion to dismiss the case against him.

11            Mr. Villatoro Santos subsequently filed a habeas

12   petition.  I note that almost all of the filings in that

13   habeas case are not accessible to this court or to the

14   public.  But there is a notice on the public docket

15   indicating that the government served Mr. Villatoro Santos

16   with a notice to appear at an immigration hearing on June

17   3rd and that action appears to have led to the withdrawal

18   of his habeas petition.  According to the ICE website,

19   Mr. Villatoro Santos is still in ICE custody.

20            Do you know the status of that immigration

21   proceeding?

22            MR. DURHAM:  No, your Honor, but we can find

23   that out.

24            THE COURT:  All right.

25            I want the government to provide copies of the

8

1   filings in that habeas action which, as I said, are not on

2   the public docket.  If necessary, you can submit those

3   documents under seal.  The docket doesn't indicate why

4   those filings are not accessible to the public or the

5   court.

6           MR. NOOTER:  Your Honor, I can't add very much

7   to it but I have spoken to the lawyer who represented

8   Mr. Villatoro Santos in the federal court and he said the

9   habeas petition was withdrawn because he did agree to send

10   the case to immigration court where it is pending, but

11   with another lawyer.

12           So he didn't know the status.

13           THE COURT:  Okay.

14           MR. NOOTER:  -- of the immigration proceeding.

15           THE COURT:  All right.

16           MR. NOOTER:  Naturally it's in our interest to

17   make sure that his immigration rights can be adjudicated,

18   whether before or after or whatever.

19           THE COURT:  All right.

20           I am aware that there are procedures that do

21   permit the government to initiate immigration proceedings

22   while a defendant is in criminal custody.  It doesn't

23   happen every day but I know that it does exist.  We'll let

24   the government address that.

25           MR. NOOTER:  That's true, actually.

9

1        I have represented a lot of people who, while

2    serving their federal sentence, had an immigration

3    proceeding.

4        THE COURT:  As I said, at the end I'm going to

5    give you dates for submissions because I'd like it really

6    fleshed out a bit.

7        Lastly, another thing I wanted to address is

8    some recent developments in related matters that occurred,

9    even after I scheduled this conference.  As outlined in my

10   July 16th decision, press reports indicated that there was

11   a link between El Salvador's request for the alleged

12   leaders of MS-13 in US custody, and the Venezuelans who

13   were sent to El Salvador on March 15th who the government

14   alleged were members of Tren de Aragua.  According to one

15   press report, an email sent between the United States and

16   Salvadoran officials indicated that El Salvador had

17   requested the deportation of nine specific MS-13 members

18   and that, upon the return of these individuals,

19   El Salvador would provide the US Government a 50 percent

20   discount for the cost of housing these Venezuelans for

21   year two of their confinement in El Salvador.

22       Mr. Arevalo-Chavez appears to be one of the

23   individuals who El Salvador specifically requested.

24   According to news reports last Friday these Venezuelans

25   who were imprisoned in El Salvador were sent back to

10

1   Venezuela.  The alleged arrangement to trade nine MS-13

2   defendants for a 50-percent discount raises a number of

3   questions in my view about the propriety and merits of

4   this reported deal.  For one thing, why would the

5   United States trade nine defendants who are alleged to be

6   high-level members of MS-13 for $3 million?  Is that a

7   good deal for the United States?

8          But I note that entire arrangement now appears

9   to be moot since these Venezuelans were shipped to El

10  Salvador.  So, in light of last week's developments, is

11  the government still seeking to dismiss the charges here

12  in order to send this defendant to El Salvador?  And, if

13  so, why?

14         MR. DURHAM:  Your Honor, we'd like to address

15  that in writing, if the court is amenable to it.

16         THE COURT:  I am.

17         MR. DURHAM:  Obviously there are a lot of

18  government organizations, leadership within our office, as

19  well as the Department of Justice who are going to be

20  involved in what position we take on that issue.

21         THE COURT:  I appreciate that.

22         Finally, Mr. Freeman, your April 23rd letter

23  indicated you were seeking discovery.  I would like you to

24  submit a letter identifying the specific discovery that

25  you are seeking and please explain to me in the letter why

11

1    you are entitled to that discovery and, of course, the

2    government can file a response.  I'll give you dates in an

3    order I will issue after today's conference.

4              Finally, we did receive a letter from your

5    client, Mr. Freeman.

6              MR. FREEMAN:  Your Honor, it's my understanding,

7    I have seen the letter, and we have no objection if it is

8    served -- well, it can be handed over by the court to the

9    government or we would provide a copy.

10             We do not object to the public filing.

11             THE COURT:  That's what I wanted to know.

12             It will be publicly filed.

13             MR. FREEMAN:  Yes.

14             THE COURT:  I'm going to issue an order today

15   that will give you dates for these submissions.

16             MR. FREEMAN:  Your Honor, can I have a moment,

17   please?

18             THE COURT:  Yes, yes.

19             (There was a pause in the proceedings.)

20             MR. FREEMAN:  Your Honor, may I address the

21   court now?

22             THE COURT:  Yes.

23             MR. FREEMAN:  We would like your Honor to

24   continue the order that you issued and I don't have the

25   date, but you will recognize the order by its contents.

12

1          The order says that my client will not be

2    removed from the MDC without notice to the court, and we

3    would ask that you continue that order.  I think the way

4    it reads it's indefinite but out of an excess of caution

5    we would like to ask you to issue it again or to make sure

6    that it remains in full force and effect.

7          THE COURT:  I will.

8          Anything else?

9          MR. FREEMAN:  I think that's it.

10          THE COURT:  Mr. Durham?

11          MR. DURHAM:  Just for the record, your Honor, I

12    believe that's in reference to the court's April 4th, 2025

13    order.

14          THE COURT:  All right.

15          Do you have any objection to that order?

16          MR. DURHAM:  We do not, your Honor.

17          That order is in place.  We have instructed

18    others they must abide by it.

19          THE COURT:  All right.

20          Anything else, Mr. Durham?

21          MR. DURHAM:  No, your Honor.

22          THE COURT:  Thank you, everyone.

23          (The matter concluded.)

24

25