UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

THE UNITED STATES OF AMERICA,

    -v.-                                                                    22 Cr. 429-01 (JMA)

VLADIMIR ANTONIO AREVALO-CHAVEZ,
    et al.,

           Defendants.
_____

DEFENDANT'S PROPOSED INTERROGATORIES
ON MOTION TO DISMISS INDICTMENT

The defendant VLADIMIR ANTONIO AREVALO-CHAVEZ, through his attorneys, in response to the Court's Order of July 24, 2025, submits the following interrogatories and document requests to the Government in order to substantiate and clarify the basis of our objections to the dismissal of the indictment without prejudice and to support our request for an opportunity to file a writ of habeas corpus on behalf of the defendant after the indictment is dismissed but before the defendant is moved from his current place of confinement.

The requests are subdivided under the areas of concern raised by the defendant's attorneys in our response to the Government's motion to dismiss dated April 23, 2025 (ECF #167) and June 13, 2025 (ECF #180).

-1-

## Dismissal With or Without Prejudice

## The Status of the Defendant's case(s) in El Salvador

1. Please state why the Government wishes to have the defendant sent to El Salvador "...so that El Salvador can proceed first with its criminal charges against the defendant under Salvadoran law. ..." when the record shows that the defendant has already been convicted, in absentia (because he was in custody in the United States at the time) at the time of his conviction and sentence in El Salvador where he received a total sentence of imprisonment of 39 years (see ECF# 178-3 "arrest warrant, suggesting that he was convicted on January 6, 2025, and Statement issued by the El Salvador Attorney General's Office dated October 22, 2024, stating that the Attorney General's Office managed to get [the defendant] sentenced to 39 years in prison..."[1]

   a) Please state whether there was a defense attorney present for the proceedings, and whether the proceedings were part of a "mass" prosecution which is now permitted in El Salvador under the special state of emergency

---

[1] https://www.fiscalia.gob.sv/fiscalia-logra-condena-de-39-anos-carcel-para-criminal-ms-13/ (and "translate").

procedures that were set up under the administration of President Nayib Bukele[2]

b) Please state whether the charges brought in the 2024-2025 proceeding just referenced are part of the same indictment ("instruccion") that is dated May 29, 2018 (ECF #178-2 and 4) or whether those are considered separate charges from those for which the defendant was already convicted.

c) Please state what the Government's knowledge is of what if any Due Process the defendant will receive under the current criminal procedure for persons charged in El Salvador with "illicit associations" (gang membership) given the "Law Against Organized Crime" (referenced in the WOLA (Washington Office on Latin America) article, id.), and the U.S. State Department 2023 Country Reports on Human Rights Practices: El Salvador" (referenced in ECF #180, at page 3).

d) Please state whether the Government has any basis for stating that the defendant would have a right under Salvadoran criminal procedure law to move to re-open the conviction already imposed in El Salvador or to file an appeal of the conviction to a higher court in El Salvador.

e) Please obtain and provide the record of proceedings in the case in El

---

[2] https://www.wola.org/analysis/mass-trials-in-el-salvador-are-an-alarming-assault-on-human-rights/

Salvador in which the defendant was convicted and sentenced to serve 39 years in prison.

## Prison Conditions in El Salvador

2. Please state whether any officials of the U.S. Department of State, or any other agency of the United States, has conducted an investigation of the conditions of the prison system in El Salvador, and of the "Centro de Confinamiento del Terrorismo" (CECOT) prison in particular (where deportees from the United States are being sent) as part of the preparation of a 2024 "Country Conditions Report" (issued annually by the Department of State for every country in the world), or in connection with the agreement made between the U.S. government and the government of El Salvador for El Salvador to accept and incarcerate deportees from the United States.

3. Please provide any reports or complaints made to the U.S. embassy or the U.S. government from citizens or residents of the United States concerning the treatment of persons detained in the prisons of El Salvador and their ability to communicate with attorneys and family members, to receive medical treatment, or to report any physical and psychological mistreatment in the El Salvador prison system since March 27, 2022, when the "State of Exception" was imposed in El Salvador.

4. Please state whether any official of the United States, including any consular officer of the U.S. Embassy, has conducted any investigation, examination, or visitation of the "Centro de Confinamiento del Terrorismo" (CECOT) prison in El Salvador since it commenced operations in or about 2023, and provide the dates of any such visits or examinations and any documentary memorandum of such visits or examinations. Please provide the names of any such persons and any written memoranda or reports prepared in connection to any and all such investigation or visitation of the conditions to the prison.

Terms of the Agreement to Send Deportees
from the United States to El Salvador

5 . Please state whether the government of El Salvador, as part of its agreement to accept deportees from the United States in return for the payment of millions of dollars, made any guarantees that prisoners from the United States who are removed to El Salvador will not be mistreated or tortured, and will receive proper medical care, sufficient food and other basic rights of prisoners, and be provided with the ability to communicate with attorneys and family.

6. Please provide any written memorandum of understanding or agreement with respect to the arrangement agreed to between the U.S. Secretary of State[3] and

---

[3] Secretary Marco Rubio traveled to El Salvador in February, 2025, and made the agreement with the Bukele government to accept deportees from the United States in return for millions of dollars and, apparently, the return from the United States to El Salvador of nine

the government of El Salvador, as well as any cable or email communications or memoranda maintained by the Department of State or any other U.S. government agency in which the terms of the agreement to pay millions of dollars to El Salvador in return for El Salvador accepting for detention deportees from the United States. If the agreement was not memorialized in writing please state the names and positions of any members of the U.S. government who participated in the discussions or negotiations resulting in the agreement so that they can be deposed.

      7. Please provide any side agreements, riders, memoranda of understanding, or any other written record maintained by the Department of State or any other U.S. government agency in which the protection of the rights of prisoners accepted from the United States who are to be received and detained in El Salvador is stated.

      8. Please provide all written memoranda, email communications or cable communications in which the return of defendants charged in the United States with crimes involving the MS-13 gang to El Salvador was proposed, negotiated, discussed or agreed to since the Nuevas Ideas party and Nayib Bukele took control

---

"high-ranking" members of the MS-13 gang, according to numerous press reports cited in filings made to this Court by the defense and in the Memorandum and Order of this Court dated July 16, 2025 (on the unsealing of the submissions made by the parties with respect to the motion to dismiss the indictment.

of the government of El Salvador. If such discussions were not memorialized in writing please state the names and positions of any members of the U.S. government who participated in the discussions or negotiations resulting in the agreement so that they can be deposed.

### The Government's Justification for Moving to Dismiss the Indictments Against Only Several of the Defendants in the Pending Federal Cases

9. Please provide the Government's rationale for moving to dismiss only some of the defendants in cases pending for trial in the United States Courts (reportedly, nine members of MS-13 leadership, including the defendant).

10. Please state whether any of the defendants whose cases the Government has moved, or intends to move, to dismiss have entered guilty pleas or plea agreements with the Government, and whether the terms of any plea agreements so entered include the agreement to dismiss the charges with the understanding that the defendants will be removed to El Salvador. If the agreements do not so provide, please state whether the Government will be honoring any promises made to those defendants in the plea agreements.

11. Please state what the government's "good faith" basis is for moving to dismiss the indictment against the defendant with the expectation that the defendant will be removed to El Salvador now that the Government knows that the defendant has already been prosecuted and convicted in El Salvador and sentenced

to a term of imprisonment of thirty-nine years.

12. Please provide any written memoranda, cable or email communications, written memoranda of understanding with the government of El Salvador, or memoranda of analysis of what the reason is for the El Salvador government's request to remove the defendant to El Salvador, including any analysis made by officials of the U.S. government as to what is expected to happen to the defendant after he is removed to El Salvador.

13. Please state if the Government has any information about what has happened to other defendants whose cases were dismissed and who were sent back to El Salvador (specifically, Cesar Humberto Lopez Larios, whose case was dismissed by the Court) after they were removed to El Salvador with respect to a) whether there was any court proceeding in El Salvador after they were sent back, b) where they were detained, c) whether the Government has inquired as to the conditions of confinement of them after they were detained in El Salvador, d) whether the U.S. Embassy or any consular officers or other U.S. government officials have received any complaints concerning the conditions of confinement, the access to attorneys, the access to family, the provision of medical treatment, and any reports of torture or mistreatment while in detention in El Salvador.

Dated:    New York, New York
          August 8, 2025

Respectfully submitted,

 */s/ Louis M. Freeman*
LOUIS M. FREEMAN

 */s/ Thomas H. Nooter*
THOMAS H. NOOTER

Attorneys for Defendant Vladimir Antonio Arevalo-Chavez